**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **CRESTEK, INC. & SUBSIDIARIES**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**INTERNAL REVENUE SERVICE**,<br><br>Defendant. | Case No. 1:17-cv-00200 (TNM) |

## MEMORANDUM OPINION

Crestek, Inc. & Subsidiaries and its CEO, J. Michael Goodson (collectively, "Crestek"),

challenge the Internal Revenue Service's response to their Freedom of Information Act, or

FOIA, requests for 22 categories of documents related to their income tax liabilities from 2006 to

2014. *See* Compl. Exs. 1, 3. The IRS identified 14,482 pages of responsive records, 12,467 of

which it produced in full. Mot. Summary J. Decl. of William V. Spatz (Spatz Decl.) ¶¶ 6-7. The

IRS invoked several FOIA exemptions to withhold 920 pages in full and to redact portions of the

remaining 1,095 pages. *Id.* ¶ 7. During this litigation, the IRS resolved some disputes by

disclosing additional materials. Reply ISO Mot. Summary J. Supplemental Decl. of William V.

Spatz (Supp. Spatz Decl. I) ¶ 20; Second Supplemental Decl. of William V. Spatz (Supp. Spatz

Decl. II), ECF No. 41, ¶¶ 8-9. But Crestek still challenges the adequacy of the IRS's search for

responsive records. It also disputes many withholdings and redactions that the IRS made under

FOIA's exemptions for documents that would not otherwise be available to private parties in

litigation and for law enforcement information that could reasonably be expected to compromise

a confidential source or to risk circumvention of the law by disclosing investigatory techniques

and procedures. Because the search was adequate and at least one FOIA exemption justifies each withholding and redaction, the IRS's Motion for Summary Judgment will be granted.

## I. LEGAL STANDARD

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (request must "reasonably describe[]" records sought). So, a FOIA defendant is entitled to summary judgment if it shows that there is no genuine dispute about whether "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). Courts decide the "vast majority" of FOIA cases on motions for summary judgment. *See Brayton v. Office of United States Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

To show that any unproduced documents are exempt from FOIA, an agency may file "affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). To show that any unproduced documents are unidentifiable, a defendant must show "a good faith effort to [] search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In other words, the defendant must "demonstrate beyond material doubt that its search was

reasonably calculated to uncover all relevant documents." *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). The touchstone of the analysis is the reasonableness of the search, not the records produced. *See Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) ("[T]he adequacy of a search is determined not by the fruits of the search, but by the appropriateness of [its] methods."); *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) ("[A] search, under FOIA, is not unreasonable simply because it fails to produce all relevant material.").

An agency has discretion to craft its search to meet this standard and does not have to search every system if additional searches are unlikely to produce any marginal return. *See Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Searching for records requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003). This is "hardly an area in which the courts should attempt to micro-manage the executive branch." *Id.* To establish the reasonableness of its search, an agency can submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. Agency declarations enjoy "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

## II. ANALYSIS

### A. The IRS Conducted an Adequate Search

The IRS has provided affidavits describing its search for responsive documents. Mot. Summary J. Declaration of Charlene Inman (Inman Decl.) ¶¶ 4-11; Spatz Decl. ¶¶ 4-5. It has also provided an affidavit stating that, "[t]o the best of my knowledge, there are no other files

responsive to [Crestek's] FOIA requests that would be located in any other office or location." Supp. Spatz Decl. I ¶ 13. Crestek challenges both the sufficiency of these declarations and their credibility. *See* Opp. to Mot. Summary J. 5-6; Sur-Reply to Mot. Summary J. 1-2.

Crestek raises two challenges to the sufficiency of the IRS declarations. *First*, Crestek complains that the declarations do not say the IRS located "all responsive documents." Opp. to Mot. Summary J. 6. But the law does not require such a representation. *See Mobley*, 806 F.3d at 583 (noting that a search may be adequate even if it does not identify all relevant material). If Crestek intended to point out that the original declarations did not state that the IRS searched all files likely to contain responsive materials, *see Oglesby*, 920 F.2d at 68, the Supplemental Spatz Declaration remedies this deficiency. *See* Supp. Spatz Decl. I ¶ 13.

*Second*, Crestek complains that Lisa Rodriguez and Carmen Presinal-Roberts, "who actually originally gathered and identified the documents," did not author the declarations. Opp. to Mot. Summary J. 6. But Crestek cites no legal authority stating that the person who conducted a search must author the agency's declaration to prove the search's adequacy. *See id.* Nor does it cite anything in the record to suggest that the declarants did not conduct the search as they claim. *See id.*; *see also* Inman Decl. ¶¶ 4-11 (describing steps Ms. Inman took to identify responsive records); Spatz Decl. ¶¶ 4-5 (describing steps Mr. Inman took to identify additional responsive records); Supp. Spatz Decl. I ¶¶ 9, 11-13 (same).[1] I conclude the IRS declarations are sufficient. *See Assassination Archives & Research Center, Inc. v. CIA*, __ F. Supp. 3d __, 2018 WL 3448229 at *3 (D.D.C. July 17, 2018) ("No statutory provision or court precedent requires

---

[1] Ms. Inman states that she asked Ms. Rodriguez for files in her possession and that they worked together to determine which records were responsive. Inman Decl. ¶¶ 5-6, 9. Ms. Inman also states that Ms. Presinal-Roberts told her Crestek had obtained discovery of the non-privileged portions of its file for the tax years ending in June 2008 and June 2009. *Id.* ¶ 8. But this does not show a need for declarations by Ms. Rodriguez and Ms. Presinal-Roberts.

affidavits from all government employees involved in the search or dictates who among them should be the affiant.").

Crestek has also failed to overcome the presumption of good faith accorded to the IRS declarations. *See SafeCard*, 926 F.2d at 1201. Crestek challenges the Inman Declaration's credibility on two grounds. *First*, Crestek challenges its credibility because the record does not contain independent validation of its statement that Ms. Inman left a voicemail for Crestek's attorney asking if some of Crestek's FOIA requests were satisfied by discovery that Crestek had obtained in other litigation. Opp. to Mot. Summary J. 5.[2] But Crestek offers no basis for demanding corroborating evidence. *See Oglesby*, 920 F.2d at 68 (holding that a court may rely on an affidavit to determine the adequacy of a FOIA search). *Second*, Crestek challenges the Inman Declaration's credibility because the IRS did not produce responsive documents until April 2017 even though the declaration says that the IRS gathered 2,580 pages of records by March 2016 and another 445 pages of records by October 2016. *Id.* 5-6. But it offers only speculation to suggest that these facts are inconsistent. *See SafeCard*, 926 F.2d at 1201 (holding that speculation cannot overcome the presumption of good faith). Neither of these challenges to the Inman Declaration's credibility has merit.

Crestek also challenges the Spatz Declaration's credibility for two reasons. *First*, it complains that Spatz relied on others to identify responsive records and that this was unreasonable since he identified responsive records that others did not find. *Id.* at 6. But the

---

[2] Crestek seems to infer that if Ms. Inman had left this voicemail the IRS would have repeated her question or referenced her voicemail in letters to Crestek sent between January and October 2016 stating that the IRS needed additional time to collect responsive documents. Sur-Reply to Mot. Summary J. 2. But there is no contradiction between Ms. Inman's question whether part of Crestek's FOIA requests had been satisfied and the letters' position that additional records were necessary to satisfy Crestek's FOIA requests in their entirety.

Spatz Declaration—and Crestek's observation that Mr. Spatz identified responsive records that others overlooked—shows that he did not simply rely on others. Spatz Decl. ¶¶ 4-5. *Second*, Crestek challenges the Supplemental Spatz Declaration's credibility because it references Ms. Inman's voicemail without explaining how he would have personal knowledge of it. Sur-Reply to Mot. Summary J. 1-2. But the Supplemental Spatz Declaration explains that Mr. Spatz's information about Ms. Inman's voicemail was based on her representations. Supp. Spatz Decl. I ¶ 8. And none of the statements that Crestek challenges are material to the adequacy of the IRS's search for responsive records. So, I conclude that the declarations provide sufficient and credible evidence that the IRS conducted an adequate search.

## B. The IRS Has Justified All Disputed Exemption 5 Redactions and Withholdings

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). FOIA qualifies Exemption 5 by saying that "the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." *Id.* In addition to protecting documents that enjoy the deliberative process privilege, Exemption 5 protects documents subject to the attorney work-product privilege and the attorney-client privilege. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The IRS invokes all three privileges for overlapping sets of documents.

### 1. The IRS Has Justified All Disputed Deliberative Process Redactions and Withholdings

The deliberative process privilege protects the confidentiality of "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S.

132, 150 (1975). A document must be predecisional and deliberative to enjoy this privilege. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

An agency invoking the deliberative process privilege "has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States Gas Corp.*, 617 F.2d at 868. In making this showing, "[t]he identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Id.* The content of the document is also important because "factual material must be disclosed but advice and recommendations may be withheld." *Mapother*, 3 F.3d 1537. An agency's description of each document redacted or withheld plays a particularly important role in the context of the deliberative process privilege because this "privilege is so dependent upon the individual document and the role it plays in the administrative process." *Animal Legal Def. Fund v. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.C. Cir. 1999).

The IRS originally invoked the deliberative process privilege to redact or withhold 168 groups of responsive records. Spatz Decl. ¶ 22. Crestek argued that the IRS had not shown all the documents to be predecisional since the IRS did not state when each document was written or when the relevant decisions took place. Opp. to Mot. Summary J. 8-9. Crestek also argued that the IRS had not shown all the documents to be deliberative since the IRS had not identified the author and recipient. *Id.* at 9. Crestek did not specify which of its arguments applied to which of the IRS's withholdings and redactions under the deliberative process privilege.

The IRS responded to Crestek's challenge with a supplemental declaration that established the applicability of the deliberative process privilege to 15 of the 168 groups of

records at issue.  *See* Supp. Spatz Decl. I.  The supplemental declaration clarified why 46 groups of records were predecisional.  *Id.* ¶ 19.  But the IRS identified the author and recipient of only 15 of the records that it showed to be predecisional.  *See* Spatz Decl. 19 (Items 1-3), 20 (Items 3-4), 27 (Item 3), 28 (Items 6-7), 36 (Items 3-4), 38 (Item 3), 39 (Items 2-3 and 5), 41 (Item 1).  Because the IRS did not show that the remaining 153 groups of records were both predecisional and deliberative, I ordered the IRS to produce these records or submit another supplemental declaration explaining the basis for its withholdings.  ECF #38 (May 14, 2018 Order).

The IRS responded to my order by producing 1,247 pages of responsive records without deliberative process redactions and submitting a supplemental declaration to justify its withholding of the 186 pages that remained at issue.  Supp. Spatz Decl. II ¶¶ 8-10.  Crestek's response to the supplemental declaration raises three final concerns.

*First*, Crestek expresses concern about the declaration's statement that "the IRS Appeals Office uses alternative dispute resolution techniques to promote agreement, and the ordinary prohibitions against ex parte communications between IRS Appeals Officers and other IRS employees do not apply to Fast Track."  Pls.' Opp. to Supp. Spatz Decl. II 1 (quoting Supp. Spatz Decl. II ¶ 12).  Crestek speculates that any ex parte communications that took place "would not properly be a part of the IRS deliberative process."  *Id.* at 1-2.[3]  The IRS has clarified that it redacted six emails reflecting the content of ex parte communications under the deliberative process privilege.  Supp. Spatz Decl. III ¶ 9.  These communications were about whether the issues in Crestek's case were suitable for Fast Track settlement and about how the

---

[3] Crestek does not directly challenge the propriety of ex parte communications themselves.  The IRS has explained their propriety under the applicable statute and Revenue Procedure and under Crestek's Application for Fast Track Settlement, which contains a voluntary waiver of restrictions on ex parte communications.  Third Supplemental Declaration of William V. Spatz (Supp. Spatz Decl. III) ¶¶ 3-5.

IRS might withdraw the Fast Track application if it wished. *See id.* ¶¶ 8-9. They were predecisional and deliberative because they helped the IRS decide whether to pursue a Fast Track settlement or withdraw the Fast Track application. Crestek did not renew its opposition to the withholding of these communications after the IRS described their contents, and in any event I find that the IRS has adequately proven their privileged status. *See Mapother*, 3 F.3d at 1537 (holding that Exemption 5 applies to documents that are both predecisional and deliberative).

*Second*, Crestek challenges the IRS's redactions to six pages of emails. It notes that the redactions protect discussions about the effect of a request for assistance that Crestek made to the Taxpayer Advocate Office, and it asserts that these discussions have no connection to the IRS's deliberations about Crestek's tax liability. Pls.' Opp. to Supp. Spatz Decl. II 2. But the IRS explains that the discussions do have a connection to the IRS's deliberative process. Because the Taxpayer Advocate Office has significant power over IRS employees and can require them to take an action permitted by law, to refrain from taking any action, or to stop any action under way, Crestek's request for assistance caused "serious uncertainty" about the next steps for Crestek's case. Supp. Spatz Decl. III ¶ 10. So the IRS exam team discussed "what the IRS could do in the Crestek audit while it was uncertain whether the Taxpayer Advocate Office would intervene" in the team's denial of Crestek's Application for Fast Track Settlement. *Id.* ¶ 12. These are deliberations that preceded a decision about what next steps the team should take, and they enjoy the protection of the deliberative process privilege.

*Third*, Crestek challenges the adequacy of Paragraph 27 of the IRS's second supplemental declaration because the IRS "does not provide the identifying names of the individuals claimed to be the IRS Counsel who engaged in communications." Pls.' Opp. to

Supp. Spatz Decl. II 2.[4]  But the IRS has not claimed that any of the redactions and withholdings in question protect communications in which an IRS counsel participated.  Spatz Decl. II ¶ 27. The IRS describes the records as entries in Appeals Officer Koprowski's Case Activity Record that reflect her conversations with Tax Computation Specialist Jen Xenakis and two drafts of a statutory notice of deficiency with handwritten annotations believed to have been made by Ms. Koprowski.  *Id.*  Crestek is right that the IRS has not provided the names of any IRS counsel related to these records.  But that does not undermine the IRS's claim of privilege.

After several rounds of briefing, four declarations, and extensive production, the parties have narrowed their disputes about the deliberative process privilege down to three issues.  None of the Crestek's arguments about these issues has merit.  So I will grant the IRS's motion for summary judgment on its redactions and withholdings under the deliberative process privilege.

## 2.  The IRS Has Justified All Disputed Attorney Work-Product Privilege Redactions and Withholdings

The attorney work-product privilege protects the confidentiality of materials prepared in anticipation of litigation by or for a party or by or for a party's representative, including a party's attorney or agent.  *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) (citing Fed. R. Civ. P. 26(b)(3)).  The IRS invokes the attorney work-product privilege to redact or withhold 22 groups of responsive records.  Spatz Decl. ¶ 14.  Crestek concedes that the IRS may have rightfully redacted or withheld some of these documents.  Opp. to Mot. Summary J. 8.  But it argues that

---

[4]  Similarly, Crestek objects to the fact that Paragraph 25 of the IRS's second supplemental declaration references protected communications with IRS counsel without providing their names.  Pls.' Opp. to Supp. Spatz Decl. II 2 (citing Supp. Spatz Decl. II ¶ 25).  But the second supplemental declaration mentions these documents only in passing to note that my order required no supplemental explanation of why these documents are privileged.  *See* Supp. Spatz Decl. II ¶ 25.  The names of the IRS counsel appear in the IRS's first declaration.  Spatz Decl. 19 (Items 1-3), 27 (Item 3), and 36 (Item 3).  As my order suggested, there was no need for the IRS to repeat this information in its second supplemental declaration.

the Court cannot evaluate the applicability of the privilege to any of the documents in question because the IRS has not stated when it first anticipated litigation, making it impossible to tell whether the documents were prepared in anticipation of litigation. *Id.* Crestek also argues that the Court cannot adequately evaluate the applicability of the privilege to documents for which the IRS has not specified the name of the author, sender, or recipient. *Id.*

The IRS has resolved Crestek's first concern by submitting a supplemental declaration stating what litigation the IRS anticipated in preparing each document for which it has invoked the attorney work-product privilege and stating the date on which the IRS first anticipated that litigation. *See* Supp. Spatz Decl. I ¶¶ 14-17.[5] Crestek's second concern apparently applies to five documents withheld in full: Although Crestek again has not specified which withholdings it wishes to dispute, the IRS failed to specify the name of the author, sender, or recipient for four draft annotated timelines and one request for a tax computation specialist. *See* Spatz Decl. ¶ 14(a). But the IRS has stated that the timelines were prepared at the direction of IRS counsel to help respond to allegations of misconduct. *Id.* This shows that the timelines were prepared by or for a party—the IRS—and by or for a party's representative—IRS counsel. *See Tax Analysts*, 117 F.3d at 620. And it has stated that the request for a tax computation specialist was based on legal advice given to Ms. Koprowski, an IRS employee, supporting an inference that an IRS representative made the request. *See* Spatz Decl. ¶ 14(a). So, Crestek has failed to raise any viable challenge to the IRS's invocation of the attorney work-product privilege.

---

[5] Even without this supplemental declaration and without specific dates on which the IRS anticipated litigation, the IRS provided sufficient information to determine that several documents constituted attorney work product. *See, e.g.*, Spatz Decl. ¶ 14 (explaining that the IRS reasonably anticipates litigation whenever it prepares a statutory notice of deficiency and listing withholdings related to the preparation of a statutory notice of deficiency).

### 3. The IRS Has Justified All Disputed Attorney-Client Privilege Redactions and Withholdings Except Five Withholdings for Documents That Enjoy the Attorney Work-Product Privilege

Exemption 5 and the attorney-client privilege extend to "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services" and to "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts*, 117 F.3d at 618. "In the governmental context, the client may be the agency and the attorney may be an agency lawyer." *Id.* The IRS invokes the attorney-client privilege to redact or withhold 30 groups of responsive records. Spatz Decl. ¶ 13. As with the attorney work-product privilege, Crestek concedes that the IRS may have rightfully redacted or withheld these documents. Opp. to Mot. Summary J. 7-8. But Crestek argues that the IRS has not adequately established the applicability of the privilege to documents for which it has not expressly identified who provided advice or information to whom. *Id.*

Once again, Crestek has not troubled to specify which documents it believe the IRS improperly redacted or withheld. *See id.* But I have identified only six records that the IRS withheld in full without expressly stating who provided advice or information to whom. One of these is a markup by IRS Counsel Rodriguez of a draft letter by IRS Manager Sally Warner to Crestek's counsel. Spatz Decl. ¶ 13(a). Although the IRS does not expressly state who Ms. Rodriguez provided the markup to, the IRS's description of the document makes it clear that Ms. Rodriguez offered her advice to Ms. Warner. *See id.* This puts it within the scope of the attorney-client privilege. The IRS has not described the other five records with enough detail to allow me to determine that the attorney-client privilege applies. These records are a request for a Tax Computation Specialist and four draft annotated timelines prepared at counsel's direction to

help respond to allegations of misconduct. *See id.* But they still enjoy the attorney work-product privilege, as discussed above, so no disclosure is necessary. *See supra,* Part II.B.2.

### C. The IRS Has Justified All the Exemption 7(D) Redactions and Withholdings

Exemption 7(D) shields from disclosure "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7). The IRS had a confidential source in proceedings against Crestek, it has not disclosed this source, and it has withheld or redacted 17 groups of responsive records that could reasonably be expected to identify the source. Mot. Summary J. 12; Spatz Decl. ¶ 29. Crestek argues that it already knows the identities of two whistleblowers, that one of them has waived her rights to confidentiality, and that the other has no right to confidentiality because he did not provide information directly to the IRS on a Form 211. Opp. to Mot. Summary J. 10. My review of the record, the briefing, and the IRS's *in camera* submission persuade me to reject Crestek's argument. Further explanation on the public record would thwart the purposes of the exemption, but I am satisfied that the IRS's withholdings and redactions are necessary to avoid disclosing the identity of a confidential source. *See* 5 U.S.C. § 552(b)(7).

### D. The IRS Has Justified All the Exemption 7(E) Withholdings

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). The IRS has withheld or redacted 15 groups of responsive records under Exemption 7(E). Spatz Decl. ¶ 24. Crestek challenges the withholding of six partially-

completed copies of IRS Internal Form 11369.  Opp. to Mot. Summary J. 9-10.[6]  The IRS uses

Internal Form 11369 to evaluate information provided by whistleblowers.  Spatz Decl. ¶ 24(a).

Release of this information would disclose the process by which the IRS evaluates whistleblower

information and risk circumvention of the law.  Spatz Decl. ¶ 24.  Thus, Exemption 7(E)

applies.[7]

### E.  Crestek Has No Right to Discovery

Crestek's Sur-Reply requests that I postpone a decision on the IRS's Motion for

Summary Judgment until Crestek conducts discovery.  Sur-Reply to Mot. Summary J. 2, 4, 6.[8]

A party opposing a motion for summary judgment may seek discovery based on an affidavit or

declaration specifying the reasons that it cannot yet present the facts necessary to justify the

opposition.  Fed. R. Civ. P. 56(d).  To specify adequately the reasons for further discovery, a

party opposing summary judgment must "indicate what facts [it] intend[s] to discover that would

create a triable issue and why [it] could not produce them in opposition to the motion."

---

[6]  Crestek states that the Spatz Declaration lists four documents under the description "Partially-
Completed IRS Internal Forms 11369."  *Id.*  But the Spatz Declaration lists pages 12791-12796,
12944-12946, 12957-12959, and 13027-13032 under this description.  Spatz Decl. ¶ 24(a).
These pages contain six partially completed copies of Internal Form 11369.  Spatz Decl. ¶ 29(a)
(invoking Exemption 7(D), which also applies as stated above).

[7]  Crestek does not dispute that Exemption 7(E) applies to a blank copy of Internal Form 11369.
*See* Opp. to Mot. Summary J. 9-10 (disputing only the withholding of partially completed
forms); *see also* Spatz Decl. ¶ 24(a) (listing a blank Internal Form 11369 among the documents
withheld).  Although it might be possible to produce the entries made on a form while redacting
the form itself, such a production would necessarily reveal information about the structure of the
form and the types of information that the form treats as relevant to a law enforcement decision.

[8]  Crestek's Sur-Reply also argues, without citation to authority, that the public interest in its
FOIA request "outweighs the deliberative process privilege and enforcement privileges" asserted
by the IRS.  *Id.* at 4-6.  This appears to be an invitation to set FOIA's exemptions aside in
evaluating Crestek's FOIA claims.  If Crestek intends to argue that the public interest is a factor
under FOIA Exemptions 5, 7(D), and 7(E), it has forfeited this argument by failing to brief it
adequately.  *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (requiring
litigants to spell out their arguments rather than "leaving the court to do counsel's work").

*Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999). An affidavit or declaration in support of further discovery must be factually supported and may not rely on conclusory assertions. *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006). "Discovery in FOIA is rare" because courts have a right to rely on agency declarations submitted in good faith. *Schrecker v. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002). Instead of ordering discovery, courts generally request supplemental declarations when the initial declarations fail to provide all necessary information. "When an agency's affidavits or declarations are deficient," as at first they were here, "the courts generally will request that the agency supplement its supporting declarations." *Judicial Watch, Inc. v. Dep't of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002). This I have already done.

Crestek is not entitled to discovery for at least additional three reasons. First, Crestek has not supported its request for discovery with an affidavit or declaration. *See Hicks v. Gotbaum*, 828 F. Supp. 2d 152, 159 (D.D.C. 2011) (denying discovery when party opposing summary judgment filed no affidavit or declaration). Second, Crestek has not specified what facts they intend to discover. *See Carpenter*, 174 F.3d at 237. Instead, it has merely pointed to the topics it wishes to investigate—why the IRS withheld whistleblower-related documents and why the IRS declarations reference a voicemail not mentioned elsewhere in the record. Sur-Reply to Mot. Summary J. 2, 4. Third, Crestek has not shown how discovery would create an issue of material fact. *See Carpenter*, 174 F.3d at 237. I have already determined that the IRS properly withheld whistleblower-related documents and that it has explained this withholding as fully as possible on the public record. And I have explained that there is no reason other parts of the record must reference the voicemail, which, in any event, is not material to my evaluation of the search or of the redactions and withholdings. For all these reasons, Crestek is not entitled to discovery.

### III.  CONCLUSION

For the reasons explained above, the IRS is entitled to summary judgment.  A separate order will issue.


Dated: August 27, 2018                    _____
                                          TREVOR N. MCFADDEN
                                          United States District Judge